May it please the Court, I'm Maria Cora Alvinante, and I represent the petitioner in this case, Crisanto Carino Ragasa. I would like to reserve two minutes for rebuttal as well. All right. Your Honors, in this case, the petitioner is appealing the Board of Immigration's decision, affirming the Immigration Court's decision, dismissing his appeal, and finding that he did not establish U.S. citizenship by adoption, by his adoption. Petitioner asserts that the Immigration Court and the BIA wrongly applied 322 of the Act 1997 regarding derivative citizenship, which requires adoptive parents to file an application for a Certificate of Citizenship once they've petitioned him and they've adopted him. He asserts that he's within an exception to Section 1433 regarding the condition for acquiring Certificate of Citizenship because he automatically acquired citizenship under Section 1431 of Title VIII U.S.C. He asserts that he is a child who was born outside the United States, residing permanently in the United States, and he was born in a situation where one or both of his parents were naturalized when he was underage, and that he was a child residing in the legal and physical custody of his parents, his U.S. citizen parents. Prior to 1998, this particular provision did not apply to adopted children. But in 1978, there was an amendment, and a petitioner asserts that in 1978, they said that adopted children could qualify under this provision so that they could automatically acquire citizenship. The operative language of that statute talks about who are in the United States at the time of the naturalization of the adopted parents, correct? Yes, Your Honor. How does he get out of that? Your Honor, under Title VIII, 1432, Section 321, it provides that children born outside the United States of alien parents, whose parents naturalized, if both parents naturalized, it provides under Section 4 of that provision, such naturalization takes place while such child is unmarried and under the age of 18, and such child is residing in the United States pursuant to a lawful admission or permanent residence at the time of naturalization of the parents' last naturalization. So, Your Honor, what I'm stating is that his parents were naturalized in 1956. And he was not in the United States, obviously, at that point. No, Your Honor, no. So how can he be in the United States at the time of naturalization of his parents? I'm having a little semantic kind of somersault there. Your Honor, what I'm trying to argue is that under the former Section 320 of the U.S. section, it provides that the child residing in the United States pursuant to lawful admission for permanent residence at the time of naturalization or thereafter begins to reside and to be permanently in the United States while under the age of 18. So under the former Section 320, it provides that he can come to the United States as a permanent resident, and then even though his parents have already become, his adopted parents have become naturalized citizens, once he begins to reside in the United States as a permanent resident, he qualifies for automatic citizenship. I don't want to get you off your argument, but would you move to the drug admissibility issue and whether or not this drug is actually categorically covered? Your Honor, with respect to the drug issue, my client was charged with attempted promoting dangerous drug in the first degree. The drugs that were on the State of Hawaii list was not on the federal list at the time he was, he pled guilty in 2008. And because the state list was overly broad and it did not include the dangerous drugs that were in the federal list, he should not be considered in violation of federal drug charge. The BIA used the categorical approach? Yes, Your Honor. They said that the Hawaii statute and the federal statute mirrored each other? And you argue that's wrong? Yes. Does the modified categorical approach work? I don't believe so, Your Honor. Why is that? Because the statutory, if you look at the four corners of the statutory language, attempted promoting dangerous drugs in the first degree, the definition of dangerous drugs in the first degree, which my client pled guilty to, includes those drugs. So it cannot be withdrawn or taken out, but it's included in his change of plea and not included in the list that's provided by the federal government. So it's overly broad. It includes drugs that are not in the federal list. So the question I have That's the categorical, but what are the modified categorical? Have you listed the documents of conviction? And can you tell us whether the documents of conviction show that there was a conviction of a CSA or Central Substance Act drug? In looking at the documents of conviction, Your Honor, there was a drug that was listed. You conceding that there was a drug listed? I thought the government said there wasn't. Maybe I misunderstood something. I think they withdrew it, Your Honor. That's correct. We'll ask them. They did withdraw it. So Do you want to save your time on that point? Yes, Your Honor. All right. Well, with respect to my client, Your Honor, my argument is that he automatically, again, became an American citizen under the old former act of 320 and not 322, which was the act that the United States government applied to him, that this is consistent with the fact that he was born in 1966. He entered the United States in 1980. He was adopted in the family court on the Big Island in 1980. He was 14 years old. Both of his parents were naturalized citizens. His mother was a naturalized citizen in 1964. His parents were married in 1956. He resided with his parents all that time after he came into the United States. Your Honor, after 1978, when they changed the law and they said that adopted children could come under the provision which provides that where both parents are naturalized, my client has met all those requirements. He was under 16 when he became an adopted child of Crisanto and Cloppy Regassa, Your Honors. However, they were already naturalized citizens. Yes, Your Honor. Yes. But he was not considered an adopted child until 1980, which is two years after they passed that law that said adopted children could qualify under the provision of the former 320. You mean his adoption when he was 14 wasn't effective until the 1978 Act had gone into effect? Yes, Your Honor. What facts buttressed that conclusion? Your Honor, the facts that the USCIS required that they have an order from the court, from the family court, that there was, in fact, a formal adoption. That took place only in 1980? Yes. And before that time, why do you say he was adopted? He was petitioned by his adopted parents and brought to the United States. And he came into the United States in November of 1980 as well. I thought he came when he was 14. Yes, he did. Oh, that was 1980? Yes. He was born in 1966, Your Honor. So this would be consistent, Your Honors, with past Ninth Circuit cases. Solis-Espinosa v. Gonzalez was a Ninth Circuit 2005 case where they held that a child acquired automatic citizenship at birth even though the person, his parents, the U.S. citizen parent was not his parent but an adopted parent. His father was not an American citizen, but his stepmother was a U.S. citizen. But in that case, in Solis-Espinosa v. Gonzalez,  Again, also in Scales v. INS is a 2000 case where the Ninth Circuit held He had a U.S. citizen parent at the time of birth in Solis-Espinosa, correct? Yes. But that was his adoptive parent. But he lived with her thinking that that was his mother and his parents. His father, who was a long-term permanent resident, married his U.S. citizen stepmother. In Scales v. INS, which is another Ninth Circuit case in 2000 there, the court said that the child acquired automatic citizenship at birth also even though neither of his biological parents were U.S. citizens. But at the time of his birth, his mother, who was not an American citizen, married a U.S. citizen. So those are two situations where the petitioners were requesting automatic citizenship. In my situation, Your Honor, Mr. Rigasa was adopted by two naturalized American citizens. He lived with them as a long-term permanent resident. They were married in 1956 and were asking the court to allow him to be considered a citizen of the United States under the provisions that he automatically became a U.S. citizen because both of his parents were naturalized citizens. At the time he came in the United States and at the time he was formally adopted. But they didn't petition for him before he was 18, correct? They didn't petition him before he was 18. No, they did. He came in when he was 14. 14, yes. But they didn't petition for him to be an American citizen before he was 18. They never filed any certificate of citizenship under 322, which is a derivative citizenship. What my client is asserting is that he automatically became an American citizen. Without petition before he was 18. Yes, and that it's not necessary. When you become an automatic citizen, you don't need to apply for a certificate of citizenship. You can just go and apply for your passport, your U.S. passport. Aloha, your honors, and may it please the court. My name is Theodore William Atkinson. It's my privilege to represent the respondent in this case. Let me begin by saying this is a frustrating case on a lot of different levels. It is difficult as a parent to begin to understand or contemplate how two adoptive parents could oversight, could have the oversight, fail to apply for the naturalization of a child. And the record is frustratingly blank as to why Mr. Ragasse's parents did not file for his naturalization when they were required to do so and when they had an opportunity to do so. They both died in 2001, apparently on the same day. And so we may never know the answer to that. It's also frustrating from the government's perspective to have no answer to the question of why during the 21 years that Mr. Ragasse was a lawful permanent resident and had the opportunity to file for his own naturalization, he did not do so. This is a sad case in a lot of ways for these reasons. And it is important to note that sometimes the equities of a case, particularly in this setting and before these students, is sometimes frustratingly offset by the requirements of the law. And in this case, that is the result that we have here. There are very few important but undisputed facts. Mr. Ragasse's adoptive parents, his aunt and uncle, were married in 1954. They moved to the United States. I believe that his adoptive father, his uncle, became a naturalized citizen in 1956. His aunt, his adoptive mother, became a naturalized citizen in 1964. Mr. Ragasse himself was born in 1966. After both of his adoptive parents had naturalized, he was born overseas in the Philippines. And he came to the United States in 1980 on an IR-4 visa for the very purpose of being adopted by his aunt and uncle, which he was in 1981 under Hawaii state law. At no time thereafter, however, did either parent file a certificate of naturalization for him, and so we're left in the situation where we are today. Mr. Ragasse was convicted in 2008 of attempted promoting of a dangerous drug. Judge McEwen, to answer your question earlier, we don't believe the government's position is that the conviction documents are not sufficient enough to apply a modified- Double negative. I'm sorry. You mean that they aren't sufficient? No, I meant the single negative. They are insufficient to apply a modified categorical approach. There is reference to methamphetamine in the charges in the complaint preceding the indictment. Mr. Ragasse himself, at his removal proceeding, admitted to the immigration judge that he was arrested and convicted for selling methamphetamine. But that's- Is that a document of conviction? I don't think that the government can take the position that it is. I think he might have misunderstood what he was convicted of, according to the documents. That's correct. So what we're left with is, categorical is out, the modified, there's nothing in the record here in the indictment that corresponds in the documents of conviction that would show he was convicted of a listed drug, correct? Well, the formulation, I think that's incorrect. Judge McEwen, if I heard you correctly, I heard you say that neither approach is correct here. And we think that that's not accurate. We believe that the Hawaii definition of dangerous drugs is coextensive with the Controlled Substances Act. This is another source of frustration for the government. Even though it criminalizes two substances that the federal statute doesn't- It's not? Well, the Hawaii list of what is included within the definition of dangerous drugs, Schedule 1 and Schedule 2, and then 729.18, I believe it's 729.18C3. The Hawaii statute includes benzophenitol and phenethylphenitol. Right. But we understood the position that the petitioner was taking was that they were not coextensive insofar as the Hawaii statute criminalized the possession of teletomine, zolazepam, which was not within the Controlled Substances Act. That is, in fact, within the Controlled Substances Act and was considered part of that act as of January 1, 1987, when the Attorney General, through rulemaking, amended the CSA to add that substance. And so the government's briefing responded to that argument made by the petitioner's counsel that while the Hawaii Department of Public Health administrator said in his letter that was submitted at the removal proceeding that Schedule 1 and Schedule 2 was coextensive, there was no reference to 18C3. Petitioner's counsel seized on that to say, therefore, it was not coextensive because that particular substance is not listed in the Federal Controlled Substances Act. That's not true. It is. It wasn't listed in the administrator's letter. Okay. Can we just kind of cut to the chase and get through the beans and balls, et cetera? Is there a drug listed in the Hawaii statute that is in addition to the federal listing? As I stand here, I'm not aware of one. I may be incorrect, but it was my understanding that Schedules 1 and 2 of the Hawaii revised statute, the definition for dangerous drug, was coextensive with what was contained in the Controlled Substances Act. Well, then we'll have to get back into the benzos, et cetera. Okay. So let's go. Is the benzophenetol, is that on the federal drugs? I don't know the answer to that as I stand here today. The one that you said is on the federal drug is? I'm sorry. The one that Petitioner said was not is. And that is? That is the teletamine-slash-zolopram. I'm sorry. Let me give it to you. Okay. Zolazepam. Teletamine-zolazepam, which is under 329.18.C.13 of the Hawaii revised statute. Does it matter what they say if, in fact, there is one or more substances criminalized under the Hawaii statute that are not found in the federal statute? The government would be, I think, required to agree that if the Hawaii statute identifies substances that are not listed in the Controlled Substances Act, then you cannot apply the categorical approach. Okay. And if that is true, I think our position also has to be you cannot apply the modified categorical approach because the conviction documents do not contain the reference. There are two substances, the ones I referenced, that I think are in the Hawaii statute that are not in the federal, that at some point the federal was added them, but that listing expired, at least according to a Ninth Circuit unpublished opinion. Okay. So that we have at least two substances that are surplus in the Hawaii statute. And if that's the case, we only need one, right? That's correct. Any single substance. So if there is a single substance that's surplus in the Hawaiian statute, you can't go for the categorical approach. You said we already can't go for the modified categorical. So in that case, our determination by law would have to be he's not removable under Section 327 and grant the petition. I think you would have to grant the petition, but I think the result would be you'd have to remand back because I think there would still be a question, and I'm speaking from a position of responding to their arguments and from our briefing and not with respect to these substances that were not included in the briefing. But I don't know when they went off the list, and I think there's a factual question. Maybe it's a de novo question because you're interpreting two statutes. Well, but see, the difficulty with that is you are the government, and it is the government that keeps this list. We do. So what you're asking is like for a second bite at the apple on this point. Well, I don't know if the – it would seem to me, I think, if I'm correct, Your Honor, the review of whether a substance is on one list and comparing the two lists is an act of de novo review by this court. Which we can do. Which you can do, absolutely. And if we determine that, as I said before, my hypothetical, that we would grant the petition. I think that's correct. Okay. One question, Mr. Atkinson. The fact that counsel Pryor argues that another drug that wasn't supposedly on the CSA federal list was on Hawaiian statute and was wrong. That doesn't bar them from raising two separate drugs now. Well, they haven't. The court has, but it's a matter of de novo review. Right. Is there a waiver argument? There is no waiver argument. I think because it is de novo review, if the court has discovered something the petitioner's counsel has not and which government's counsel has overlooked in the briefing or in comparing the lists, then as a matter of de novo review, if that is, in fact, the case, then I think this court must grant the petition for review. Thank you for your candor. I appreciate that. Sure. I'd like to turn in the remaining minutes to the question of the citizenship issue, which I think was the one that perhaps were beyond that at this point. But I think it's important to address, for the record, the arguments here. There are two general points here, and I think the court has seized upon both of them. First, under Section 322, the requirement is clear, as we noted in our briefing under Mustanich v. Mukasey, that the adoptive parents had to have filed a certificate of naturalization for Mr. Ragasa in order for his naturalization to occur as a derivative citizen under that statute. There is no resort to either Section 320, which the petitioner's counsel talked about today, or 301A7, former 301A7, which was addressed in the briefing. And that's because they both have one fundamental requirement that cannot be met here, and that is that in either case the person born either of parents or born and then having parents, the parents have to be, one has to be an alien and one has to be naturalized at the time that the child was born, whether born of those parents or born and then later become adopted by the parents or otherwise. And that was not the case here. I think, Judge Bey, as you pointed out, both parents were naturalized two years before, at the latest, two years before Mr. Ragasa was born and almost 14 years, 14 or 15 years, before he was adopted in the United States. So I think on the citizenship question, the government, in its briefing, has pointed out that there is a statutory barrier that would allow, that would not allow Mr. Ragasa to become automatically a citizen. And as noted before, it's frustrating that his parents did not file a petition for citizenship for him, a certificate of naturalization, or that he did not do so within the 21 years. There was one other issue that I should address that was not addressed by a petitioner's counsel, and that is the cancellation, the issue of the denial of cancellation of removal. And there are two arguments here. One is that there is no constitutional right to cancellation of removal. This was framed as a constitutional violation of due process. And because there is no due process right to cancellation of removal, as has been stated by the Ninth Circuit in numerous cases cited in our briefing, there is no basis for a claim here. Even if there were a basis to claim a due process violation for denial of cancellation of removal, there is no indication that due process rights, to the extent they exist, were violated here. The judge followed the mandate of weighing both positive and negative factors in favor of cancellation of removal, and determined through his discretionary authority to deny cancellation of removal on the ground that Mr. Regassa testified that he had taken drugs for a period of 12 years, including cocaine, marijuana, and methamphetamine, that he had sold methamphetamine, including at the time leading to this arrest. And the immigration judge properly weighed those factors in considering whether or not to grant or deny cancellation of removal. So that issue was not addressed by petitioner's counsel at this hearing, but I felt that it was important for the record that we do so. Unless there are no other questions, thank you very much for your time. Thank you very much. A short time for rebuttal. You're not required to take it. I'll just take a few seconds, Your Honor. All right. Your Honor, the petitioner, once again, is still asserting that he's an automatic citizen because of the fact that at the time he came into the United States, both of his parents were naturalized, and he was a long-term permanent resident residing with them. All right. Thank you very much. Thank you, Your Honor. Thank you both counsel, coming from Washington, D.C. The case of Regassa v. Holder is submitted.
judges: Hawkins, McKeown, Bea